[871 NYS2d 276]

In the Matter of NEW YORK CITY TRANSIT AUTHORITY, Respondent, v TRANSPORT WORKERS UNION OF AMERICA, LOCAL 100, et al., Appellants.

Second Department, December 30, 2008

### APPEARANCES OF COUNSEL

*Gladstein Reif & Meginniss, LLP*, New York City (*Beth M. Margolis* of counsel), for appellants.

*Martin B. Schnabel*, Brooklyn (*Baimusa Kamara* of counsel), for respondent.

### OPINION OF THE COURT

MILLER, J.

The issue presented in this proceeding is whether an arbitrator exceeded his authority within the meaning of CPLR 7511 (b) (1) (iii) when, in the context of a disciplinary arbitration arising under the parties' collective bargaining agreement (hereinafter the CBA), having found that an employee had commit-

ted the underlying offense charged by the employer, he reduced the employer's penalty from dismissal to a reinstatement without back pay. Given the language of the relevant CBA provision, under the circumstances presented, we conclude that he did.

I

The petitioner, New York City Transit Authority (hereinafter the TA), charged one of its employees, a subway conductor, with verbally abusing and assaulting a customer at a station platform on April 14, 2006. The TA's postincident investigation revealed that on the occasion in question, the employee instigated an altercation with the customer after the customer inquired about express service at the platform. In the course of the altercation, the employee grabbed the customer by his collar and shoved him against a platform column. The customer claimed that he was released after about 10 to 15 seconds, and that the attack left a red hand print on his neck, which he observed in the mirror of a station restroom. A TA superintendent who interviewed the customer shortly after the incident in response to the latter's complaint confirmed through observation that the customer had a red mark on his neck.

The employee, who had 21 years of service with the TA, had a prior disciplinary history which included, inter alia, a five-day suspension in 1991 arising from an altercation with a customer.

At the time of the April 2006 incident, the TA had in effect a "Zero Tolerance Policy" regarding violence in the workplace.

The employee was suspended, and the TA sought his dismissal. Pursuant to the relevant provisions of the CBA between the TA and the employee's union, Transport Workers Union of America, Local 100 (hereinafter TWU), disciplinary step hearings were held on April 17 and 21, 2006. The charges were sustained at each step, and the penalty of dismissal was upheld. According to the CBA, the next step in the review process was arbitration. The relevant provision of the CBA is article II, § 2.1 (C) (19) (c), which, in pertinent part, reads:

> "If there is presented to the [arbitrator] for decision any charge which, if proved in Court, would constitute a felony, or any charge involving assault, theft of Authority property, intoxication, use of Controlled Substances, chronic absenteeism, *the question to be determined by the [arbitrator] shall be with respect*

*to the fact of such conduct.* Where such charge is sustained by the [arbitrator], the action by the Authority, based thereon, *shall be affirmed and sustained by the [arbitrator] except if there is presented to the [arbitrator] credible evidence that the action by the Authority is clearly excessive in light of the employee's record and past precedent in similar cases. It is understood by the parties that this exception will be used rarely and only to prevent a clear injustice"* (emphasis added).

A hearing was held before an arbitrator; thereafter, at the arbitrator's direction, the parties submitted closing briefs. In its approximately six-page brief, the TA argued that it had made out a prima facie case of assault. The TA further argued that dismissal was an appropriate penalty. Among other things, it argued that an employee's assault upon a member of the riding public violated the TA's Zero Tolerance Policy and could not be permitted. Furthermore, it cited previous arbitral decisions in other cases, at least some of which purportedly were verbal harassment and assault cases, in which the arbitrators upheld the penalty of dismissal, which it claimed supported a similar result here. It also pointed out that the employee had a previous disciplinary history, including a prior customer altercation which resulted in a five-day suspension.

In its approximately 1½-page closing brief, the TWU argued that based on the evidence before the arbitrator, the assault charge was not established, and that even if it was, the penalty of dismissal was too severe given the employee's length of service and disciplinary record. The TWU cited no precedent in support of its contention that the penalty of dismissal was too harsh.

The arbitrator issued an award in which he sustained the assault charge; however, he reduced the penalty imposed from dismissal to reinstatement without back pay. In his ensuing opinion, the arbitrator quoted the CBA provision set forth above. He found that the employee assaulted the customer. However, on the issue of penalty, he distinguished the previous arbitral decisions the TA had cited, found that the employee was a long-term employee with no disciplinary action in the last 11 of 21 years of his service, and concluded that this case was "worthy of the 'exception' " allowed by the CBA.

Thereafter, the TA commenced this proceeding against the TWU and its president, Roger Toussaint, pursuant to CPLR

article 75, in effect, to vacate so much of the arbitrator's award as reduced the penalty from dismissal to reinstatement without back pay, contending that the arbitrator exceeded his authority in making the award. The TWU and Toussaint answered the petition, denying its material allegations. The Supreme Court granted the petition, vacated so much of the arbitrator's award as reduced the penalty, and reinstated the original penalty. The TWU and Toussaint appeal, and we affirm.

## II

The appellants contend that the arbitrator did not find that the employee committed assault. We reject that argument. The arbitrator clearly concluded that the employee had "forcefully 'laid hands' " upon the customer, denied the TWU's grievance in part, and sustained it only with respect to the purported severity of the penalty of dismissal. Manifestly, the arbitrator found that there had been an assault; his language and disposition of the matter make no sense otherwise. On this point our dissenting colleagues agree. In their view, however, the appellants correctly contend that the arbitrator acted within his authority in overturning the penalty of dismissal. Given the relevant language of the CBA, under the particular facts presented, we take a different view.

Where, as here, the parties have voluntarily agreed to arbitrate the subject dispute, judicial review of an arbitration award rendered pursuant to that agreement is governed by the provisions of CPLR 7511 (*see Matter of Henneberry v ING Capital Advisors, LLC*, 10 NY3d 278, 283 [2008]). An arbitration award may be vacated where there has been corruption, fraud, or misconduct in procuring the award, where the arbitrator exceeded his or her power, or where there was a failure to follow the procedure of CPLR article 75 (*id.*; *see* CPLR 7511 [b]). An excess of power within the meaning of CPLR 7511 (b) (1) (iii) occurs "only where the arbitrator's award violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]; *see Matter of Henneberry v ING Capital Advisors, LLC*, 10 NY3d 278, 284 [2008]; *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 306 AD2d 486, 486 [2003]).

Here, the language of the CBA makes clear that the arbitrator has plenary authority to determine whether certain enumer-

ated underlying misconduct—in this case an assault—in fact took place. The issue of penalty presents a different situation. The CBA does not grant the arbitrator the power to fashion any penalty he finds appropriate under the circumstances. Rather, assuming he sustains the underlying charge, he is directed to uphold the TA's action unless credible evidence is presented demonstrating that it is clearly excessive in light of the employee's record and past precedent in similar cases. Furthermore, the exception is to be used "rarely and only to prevent a clear injustice." Thus, the arbitrator's authority on the penalty issue is limited and we have treated it as such in the past (see e.g. *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 306 AD2d 486, 487 [2003]; *Matter of New York City Tr. Auth. v Transport Workers Union of Am.*, 239 AD2d 421 [1997]).

Turning to the facts of this case, the TA did not specifically contend in its petition, nor does it argue in its brief on appeal, that the penalty of dismissal was appropriate based on the employee's disciplinary record, although, as noted, that record is not unblemished and includes a prior (albeit remote) incident involving an altercation with a customer. Nonetheless, the CBA requires that a two-pronged showing be made in order to invoke the exception, with only the first prong being the employee's disciplinary record. The TA's position is that the second prong, which allows the arbitrator to set aside the TA's penalty if it is clearly excessive in light of past precedent in similar cases, has not been met here. Here, the TWU cited no precedent at all. The TA, by contrast, submitted arbitral precedents, some of which purportedly involved dismissals of employees who had engaged in verbal harassment and assault, whose dismissals were upheld through arbitration. The arbitrator distinguished those precedents, but an examination of his decision reveals that he focused largely on issues, such as witness corroboration, that were relevant to the question of whether the underlying charged offenses in fact occurred (in two instances, he described the disciplined employees as "short-term"). However, having found that an assault did occur in this case, that point of distinction was irrelevant. Furthermore, nowhere in the "discussion and analysis" section of his opinion does the arbitrator use the words "clearly excessive" (except in quoting the CBA), or otherwise indicate why the dismissal of a TA conductor who assaulted a customer was a "clear injustice."

Under the circumstances, we conclude that the arbitrator exceeded his authority in reducing the penalty of dismissal, and

the Supreme Court properly granted the petition to vacate that portion of the award (*see* CPLR 7511 [b] [1] [iii]; *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]; *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 306 AD2d 486, 487 [2003]; *Matter of New York City Tr. Auth. v Transport Workers Union of Am.*, 239 AD2d 421 [1997]).

## III

We are aware of the general rules governing review of arbitral decisions, which our dissenting colleagues cite—specifically, those cases which call for deference to the arbitrator even where he or she makes factual errors or misapplies the law in making an award (*see e.g. Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308-309 [1984]). However, the cases they cite for that proposition are inapposite as they do not involve the CBA provision at issue here.

Our conclusion here is supported by our recent decision in *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO* (306 AD2d 486 [2003]), which upheld the Supreme Court's judgment granting a petition seeking vacatur of an arbitration award reducing a penalty under the subject CBA provision. From a review of the record in that case, it appears that Bert Hart, a conductor employed by the TA, inter alia, assaulted a customer on a train. The TA brought charges against him and recommended that he be dismissed; the charges and penalty were sustained through the step process. The matter then was heard before a three-member arbitration board (hereinafter the Board).\* A majority of the Board sustained the charges. However, noting that Hart had a good disciplinary record, it reduced the penalty to a time-served suspension. It did not discuss past precedent in similar cases. As relevant here, in its subsequent CPLR article 75 petition seeking vacatur of the penalty imposed by the Board, the TA argued that Hart in fact had a poor disciplinary record, which included a prior charge of being rude to and assaulting a passenger. The TA further argued that given that record, as well as the absence from the arbitration award of references to any evidence that dismissal of Hart was clearly excessive within the meaning of the subject CBA provision, the Board exceeded its power under the subject CBA provision by modifying the

---

\* In December 2002, the TA and TWU agreed to substitute a single, neutral arbitrator for the three-member Board.

penalty. The Supreme Court agreed. On the TWU's appeal, we affirmed.

Our dissenting colleagues correctly point out that *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO* (306 AD2d 486 [2003] [hereinafter *Hart*]) is factually distinguishable, but we conclude that the distinctions do not call for a different result on the facts presented in this case, which involves an employee assaulting a customer in defiance of the TA's Zero Tolerance Policy, and whose record includes a previous incident involving an altercation with a customer. It is true that here, unlike in *Hart*, the arbitrator discussed past precedent. However, the precedents included cases upholding dismissals of TA employees who had assaulted customers, and in our view do not constitute proof that dismissal of the employee in this case was "clearly excessive."

*Hart* (as well as previous authority such as *Matter of New York City Tr. Auth. v Transport Workers Union of Am.* [239 AD2d 421 (1997)]) necessarily decided that the CBA provision at issue here reserves to the courts, on CPLR article 75 review, the authority to determine whether an arbitrator has correctly invoked the "rare[ ]" exception to upholding the TA's disciplinary action with respect to enumerated conduct. Citing cases decided in other contexts or involving different bargaining agreements, such as *Matter of Silverman (Benmor Coats)* (61 NY2d 299 [1984] [commercial breach of contract dispute]) and *Rochester City School Dist. v Rochester Teachers Assn.* (41 NY2d 578 [1977] [school district collective bargaining agreement]), the dissent argues that even if the arbitrator may have violated the CBA's express limitation that the "clearly excessive" exception be invoked only "rarely," vacatur would still be improper, and that the remedy for any perceived inconvenience created by the subject provision should be pursued at the bargaining table, rather than in the courts. If that proposition is correct with respect to the CBA provision at issue here, then even factoring in the dissent's view of its factual differences, *Hart* was as unwarranted a judicial interference with the arbitral process as this case is, and was not correctly decided.

We are not prepared to draw that conclusion. The CBA provision at issue in this case is a carefully crafted direction to the arbitrator that reflects both the TWU's and the TA's intent that once an assault charge is sustained, the TA-imposed penalty must be upheld except in rare cases. As a practical matter, the dissent's view essentially writes that provision out of the CBA.

## IV

Accordingly, the judgment is affirmed.

MCCARTHY, J. (dissenting). While I agree with the majority's determination that the arbitrator sustained the assault charge, I must respectfully dissent from the majority's determination to set aside that part of the arbitration award reducing the penalty against the subject employee from dismissal to reinstatement without back pay.

At the conclusion of a step process convened pursuant to the parties' Collective Bargaining Agreement (hereinafter CBA), the petitioner, New York City Transit Authority (hereinafter TA), terminated the employee for having assaulted a customer in April 2006. The respondent Transport Workers Union of America, Local 100 (hereinafter TWU), then took the matter to arbitration on behalf of the aggrieved employee. The arbitrator sustained the assault charge, but reduced the penalty imposed from dismissal to a reinstatement without back pay.

The TA then commenced this proceeding under CPLR article 75, seeking to vacate that portion of the award that reduced the penalty, on the ground that the arbitrator had exceeded his power within the meaning of CPLR 7511 (b) (1) (iii). The Supreme Court granted the petition and the TWU appeals. I would reverse the judgment, deny the petition, and dismiss the proceeding.

The pertinent provision of the parties' CBA provides, inter alia, that where an arbitrator sustains a charge of assault,

> "the action by the [TA], based thereon, shall be affirmed and sustained by the [arbitrator] *except* if there is presented to the [arbitrator] *credible evidence* that the action by the [TA] is *clearly excessive in light of the employee's record and past precedent* in similar cases. It is understood by the parties that *this exception will be used rarely and only to prevent a clear injustice*" (CBA art II, § 2.1 [C] [19] [c] [emphasis added]).

I agree with my colleagues in the majority that there is no merit to the TWU's contention that the arbitrator did not sustain the charge of assault. The arbitrator's consideration of whether the CBA's exception should be applied would only have been necessary upon sustaining the assault charge. The arbitrator did not state or imply that his analysis of the exception was made on an alternative basis.

Where I depart from my colleagues in the majority is their conclusion that in reducing the penalty, the arbitrator's determination was in excess of his power (*see* CPLR 7511 [b] [1] [iii]). The relevant CBA provision clearly provides that upon sustaining a charge, the arbitrator may reduce the penalty imposed by the TA if he finds that it "is clearly excessive in light of the employee's record and past precedent in similar cases" (CBA art II, § 2.1 [C] [19] [c]). Here, the arbitrator determined that the "credible evidence" before him demonstrated that dismissal was "clearly excessive" in light of the employee's service record and the past precedent proffered by the TA, and thus the circumstances warranted invocation of the "rare[ ]" exception of reducing the penalty sought by the TA "to prevent a clear injustice" (CBA art II, § 2.1 [C] [19] [c]). Given the arbitrator's proper application of the exception, I respectfully disagree with the conclusion of my colleagues in the majority that the Supreme Court correctly vacated that portion of the arbitration award that reduced the penalty (*see* CPLR 7511 [b] [1] [iii]; *Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005]; *Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP*, 52 AD3d 392 [2008]; *cf. Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 306 AD2d 486 [2003]).

The only other relevant ground upon which to find that the arbitrator acted in excess of his power would be that the arbitrator's determination was irrational. To vacate an arbitration award on this ground, the award must be "totally irrational" (*Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984]; *see Matter of Tsikitas v Nationwide Ins. Co.*, 33 AD3d 928 [2006]; *Matter of Fine Hummel v Mugavero*, 5 AD3d 483 [2004]; *Ropal Constr. Corp. v God's Battalion of Prayer Church*, 305 AD2d 577, 578 [2003]; *Matter of Transport Workers Union of Am., AFL-CIO, Local 100 v New York City Tr. Auth.*, 216 AD2d 400 [1995]). Such a determination requires a finding of "no proof whatever to justify the award or [that] the award gave a completely irrational construction to the provisions in dispute and, in effect, made a new contract for the parties" (*Matter of Rockland County Bd. of Coop. Educ. Servs. v BOCES Staff Assn.*, 308 AD2d 452, 453 [internal quotation marks and citations omitted]; *see Matter of Steinberg v Novitt & Sahr*, 54 AD3d 1043 [2008]; *Matter of City of Peekskill v Local 456, Intl. Bhd. of Teamsters*, 49 AD3d 730 [2008]).

Although my colleagues in the majority may disagree with the arbitrator's decision to reduce the penalty from dismissal to reinstatement without back pay, the record does not support a finding that the arbitrator's determination was irrational, as it was not unsupported by the record and the arbitrator's invocation of the exception met the requirements set forth in the pertinent CBA provision. Preliminarily, by finding that the subject employee had committed an assault against a customer, the arbitrator clearly understood the details of the incident. Moreover, although the TA had suspended the subject employee for five days in 1991 for an altercation with a customer, even the majority concedes that such incident, which occurred 15 years before the subject assault, was "remote" in time. More importantly, the subject employee had a 21-year service record, including the past 11 years without disciplinary action. Under the circumstances, the arbitrator's determination that the employee's service record did not warrant dismissal for this incident was well reasoned and not irrational (see Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP, 52 AD3d 392 [2008]; Matter of Rockland County Bd. of Coop. Educ. Servs. v BOCES Staff Assn., 308 AD2d at 453).

It was also not irrational for the arbitrator to conclude that "substantive differences" rendered the instant case "clearly distinguishable" from those arbitral decisions in other cases the TA submitted in support of its recommendation to dismiss the employee. At the outset, I note that since the TWU was seeking to prevent dismissal of its member, it would have been better practice for it to have submitted arbitral decisions in other cases demonstrating that dismissal in this instance was "clearly excessive." In any event, the subject CBA provision did not preclude the TWU from relying on those cases cited by the TA. Moreover, even if the arbitrator misapplied the precedent submitted by the TA and relied upon by the TA and the TWU, or erred in distinguishing the cases because they involved corroborating witnesses (who were not at issue in the instant case), vacatur of that portion of the arbitrator's award reducing the penalty would still not be warranted since even an award predicated on factual errors or the misapplication of substantive legal principles must not be disturbed (see Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO, 6 NY3d at 336; Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 326 [1999]; Central Sq. Teachers Assn. v Board of Educ. of

*Cent. Sq. Cent. School Dist.*, 52 NY2d 918, 919 [1981]; *Matter of Sprinzen [Nomberg]*, 46 NY2d 623, 629 [1979]; *Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 582 [1977]; *Matter of County of Westchester v Doyle*, 43 AD3d 1055 [2007]; *see also Matter of Silverman [Benmor Coats]*, 61 NY2d 299, 308 [1984] ["absent provision in the arbitration clause itself, an arbitrator is not bound by principles of substantive law or by rules of evidence"]). In addition, despite the TA's "Zero Tolerance Policy" regarding violence in the workplace, the subject CBA provision clearly vests the arbitrator with the authority to reduce a penalty under certain circumstances, even upon a finding that an employee violated such policy by committing an assault.

*Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO* (306 AD2d 486 [2003] [hereinafter *Hart*]), relied upon by the majority, is distinguishable. In that case, the Tripartite Arbitration Board (hereinafter the Board), which at that time had authority to hear grievances, found that the subject TA employee had assaulted a passenger and, relying on the same CBA provision at issue here, "reduced the penalty imposed by the petitioner from dismissal to a time-served suspension, stating in a conclusory manner that the employee had a good disciplinary record" (*id.* at 486). This Court reversed on the ground that the Board had exceeded its authority inasmuch as no proof had been submitted to the Board that dismissal was "clearly excessive" (*id.* at 487). Similarly, in *Matter of New York City Tr. Auth. v Transport Workers Union of Am.* (239 AD2d 421 [1997]), which also involved the same CBA provision at issue here and is also relied upon by the majority, this Court affirmed the vacatur of that portion of the Board's arbitration award that reduced the penalty for a TA employee found to have assaulted a fellow employee since neither of the exceptions set forth in the CBA provision were applicable. In contrast to both of those cases, here, the arbitrator determined that the arbitral decisions in the cases submitted by the TA and relied upon by both parties as well as the employee's service and disciplinary record warranted application of the exception. Further, because both cases properly held that the Board erred in invoking the exception by failing to make the necessary findings, there is no need, as my colleagues in the majority suggest, to overrule either case.

In addition, contrary to the majority's contention, *Hart* did not implicate the directive in the subject CBA provision that a

penalty only "rarely" be reduced. Rather, in *Hart*, vacatur of that portion of the award reducing the penalty was proper because the Board did not set forth both of the required prongs before invoking the exception. In any event, whether these circumstances warranted invocation of the "rare[ ]" exception of reducing the penalty is for the arbitrator to determine, not for the courts.

My colleagues in the majority contend that upholding the award would effectively rewrite the CBA provision by rendering meaningless the language that arbitrators should reduce a penalty only "rarely." However, even if the possibility existed that the arbitrator may have violated the CBA's express limitation that the exception should be invoked only "rarely," vacatur of the award would still be improper (*see Matter of Silverman [Benmor Coats]*, 61 NY2d at 308-309; *Matter of Tilbury Fabrics v Stillwater, Inc.*, 56 NY2d 624, 627 [1982]; *Matter of West Side Lofts [Sentry Contr.]*, 300 AD2d 130 [2002]).

Similarly, as the Court of Appeals has explained in the context of school districts, "[s]urrender of the power, or part of it, to the courts or arbitrators in collective bargaining agreements may later prove to be inconvenient" (*Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d 578, 583 [1977]; *see Matter of Port Washington Union Free School Dist. v Port Washington Teachers Assn.*, 45 NY2d 746 [1978]). However, the remedy for such perceived inconvenience is found at the bargaining table, not in the courts (*see Rochester City School Dist. v Rochester Teachers Assn.*, 41 NY2d at 584).

Accordingly, I would reverse the judgment, deny the petition, and dismiss the proceeding.

DILLON and ANGIOLILLO, JJ., concur with MILLER, J.; Mc-CARTHY, J., dissents and votes to reverse the judgment, on the law, deny the petition, and dismiss the proceeding in a separate opinion, in which SPOLZINO, J.P., concurs.

Ordered that the judgment is affirmed, with costs.