[886 NE2d 764, 857 NYS2d 3]

In the Matter of Virginia Henneberry, Appellant, v ING Capital Advisors, LLC, et al., Respondents.

Argued February 6, 2008; decided March 18, 2008

## POINTS OF COUNSEL

*Mintz & Gold LLP,* New York City (*Steven G. Mintz* and *Lisabeth Harrison* of counsel), for appellant. I. The arbitration award violated appellant's fundamental constitutional right to due process of law, since the arbitrator's repeated rulings falsely led her to believe that respondents had the burden of proof on the central disputed issue and thereby materially affected the entire presentation of appellant's case. (*Matter of Beckman v Greentree Sec.,* 87 NY2d 566; *Matter of Goldfinger v Lisker,* 68 NY2d 225; *Matter of Hirsch v Hirsch,* 4 AD3d 451; *Matter of Unigard Mut. Ins. Co. v Hartford Ins. Group,* 108 AD2d 917; *P & P Indus., Inc. v Sutter Corp.,* 179 F3d 861; *Bowles Fin. Group, Inc. v Stifel, Nicolaus & Co., Inc.,* 22 F3d 1010; *Bell Aerospace Co. Div. of Textron, Inc. v Local 516, Intl. Union, United Auto., Aerospace & Agric. Implement Workers of Am. [UAW],* 500 F2d 921; *Ficek v Southern Pac. Co.,* 338 F2d 655, 380 US 988; *Matter of McMahan & Co. [Dunn New-Fund I],* 230 AD2d 1, 90 NY2d 806; *Employers Ins. of Wausau v National Union Fire Ins. Co.,* 933 F2d 1481.) II. The arbitrator exceeded his authority and impermissibly rewrote the parties' agreement when he determined that respondents had the right to terminate appellant for "unsatisfactory performance" without obtaining the approval of the contractually-designated oversight committee. (*Sweeney v Herman Mgt.,* 85 AD2d 34; *Matter of National Cash Register Co. [Wilson],* 8 NY2d 377; *Matter of Board of Educ. of N. Babylon Union Free School Dist. v North Babylon Teachers' Org.,* 104 AD2d 594.)

*Kramer Levin Naftalis & Frankel LLP,* New York City (*Robert N. Holtzman* and *Kerri Ann Law* of counsel), for respondents. I.

This Court lacks jurisdiction over this appeal. (*Mount St. Mary's Hosp. of Niagara Falls v Catherwood,* 26 NY2d 493; *Matter of Motor Veh. Acc. Indem. Corp. v Aetna Cas. & Sur. Co.,* 89 NY2d 214; *New York Cent. Mut. Fire Ins. Co. v Nichols,* 192 AD2d 1131; *Guilford v City of Buffalo,* 177 AD2d 971; *Antinore v State of New York,* 49 AD2d 6; *Matter of Goldfinger v Lisker,* 68 NY2d 225; *Matter of Hirsch v Hirsch,* 4 AD3d 451; *Matter of Unigard Mut. Ins. Co. v Hartford Ins. Group,* 108 AD2d 917; *Matter of Beckman v Greentree Sec.,* 87 NY2d 566; *P & P Indus., Inc. v Sutter Corp.,* 179 F3d 861.) II. The grounds for vacating an arbitration award are extremely limited. (*Matter of Goldfinger v Lisker,* 68 NY2d 225; *Matter of McMahan & Co. [Dunn New-Fund I],* 230 AD2d 1; *Matter of Kohnberg v Murdock,* 5 NY2d 859; *Matter of Sprinzen [Nomberg],* 46 NY2d 623; *Matter of Peckerman v D & D Assoc.,* 165 AD2d 289; *Matter of Brown & Williamson Tobacco Corp. v Chesley,* 7 AD3d 368; *Integrated Sales v Maxell Corp. of Am.,* 94 AD2d 221; *In re Griffin Indus., Inc. [Petrojam, Ltd.],* 58 F Supp 2d 212.) III. There is no basis to vacate the arbitration award. (*People v Blue,* 178 AD2d 539; *Matter of Kingsley v Redevco Corp.,* 61 NY2d 714; *Bowles Fin. Group, Inc. v Stifel, Nicolaus & Co., Inc.,* 22 F3d 1010; *Teamsters Local 312 v Matlack, Inc.,* 118 F3d 985; *Gulf Coast Indus. Workers Union v Exxon Co., USA,* 70 F3d 847; *Iran Aircraft Indus. v Avco Corp.,* 980 F2d 141; *Harvey Aluminum [Inc.] v United Steelworkers of Am., AFL-CIO,* 263 F Supp 488; *Matter of Walker v General Motors Corp., Pontiac Motor Div.,* 159 Misc 2d 651; *Hortis v Madison Golf Club,* 92 AD2d 713; *Santosky v Kramer,* 455 US 745.)

## OPINION OF THE COURT

Ciparick, J.

In November 2001, petitioner Virginia Henneberry entered into an employment agreement with respondent ING Furman Selz Asset Management, LLC, the parent company of co-respondent ING Capital Advisors, LLC. The agreement provided that petitioner was to be employed as a managing principal of ING Capital Advisors from January 1, 2001 through December 31, 2005.

Paragraph 11 of the agreement listed four circumstances that could lead to petitioner's termination, two of which are relevant here. Under paragraph 11 (b), petitioner could be terminated by a unanimous vote of the three other managing principals of ING Capital Advisors, subject to approval by the parent company's operating committee, for "unsatisfactory perfor-

mance" or "professional misconduct." In that event, she would be paid her annual salary plus certain bonuses. Pursuant to paragraph 11 (d) of the agreement, petitioner could be terminated without cause; however, she would be entitled to a much larger severance.[1]

In July 2002, the firm's other managing principals unanimously agreed that petitioner's employment should be terminated because of certain performance deficiencies. Final approval of the termination decision fell to Paul Gyra, as the operating committee was no longer in existence at this time.[2] After conducting his own investigation into petitioner's employment performance, Mr. Gyra approved petitioner's termination.

In August 2002, petitioner was notified that she had been terminated under paragraph 11 (b) of the agreement. In response, petitioner served respondents with a demand for arbitration pursuant to the agreement's arbitration clause. That clause provided that disputes would be resolved by a sole arbitrator acting pursuant to procedural rules promulgated by the American Arbitration Association (AAA).

The AAA appointed an arbitrator who, at the prehearing stage, indicated that respondents bore the burden of proof—by a fair preponderance of the evidence—to establish that they terminated petitioner in good faith for unsatisfactory performance. Respondents disagreed with the arbitrator's conclusion, and after they raised that objection, the arbitrator determined that the burden of proof issue should be held in abeyance and that respondents could later renew their objection during the arbitration. Thereafter, respondents reminded the arbitrator, both by letter and during a teleconference, that he left the issue of burden of proof open. Respondents repeatedly argued that the burden of proof should be on petitioner. They did so in their prehearing memorandum, opening statement, motion for judgment as a matter of law, closing statement and posthearing memorandum. Petitioner made no submission, however, regarding which party bore the burden of proof.

The arbitrator conducted 13 days of hearings in May, June and October of 2004. He heard testimony from 12 witnesses,

---

1. At the time of petitioner's termination, the severance differential between an 11 (b) termination and 11 (d) termination was approximately $2.1 million.

2. In February 2002, due to a corporate reorganization, the operating committee ceased to exist. In May 2002, Mr. Gyra assumed the committee's responsibilities.

including petitioner, and received 188 exhibits into evidence, 99 of which were proffered by petitioner. After the hearing concluded, the arbitrator asked for and received briefs that addressed both the evidence and the law. He then issued a decision, stating that:

> "I had ruled that [r]espondent had the burden of proof by a fair preponderance of the evidence on [petitioner's] termination for unsatisfactory performance under paragraph 11 (b) of the Agreement. I am now reversing that ruling and now rule that the burden of proof regarding the propriety of [petitioner's] termination for unsatisfactory performance under [p]aragraph 11 (b) is on the [petitioner] by a fair preponderance of the evidence. . . .

> "I also find that had [r]espondent, rather than [petitioner], had the burden of proof, as I had first ruled, it would have satisfied its burden by a fair preponderance of the evidence."

Having thus allocated the burden of proof, the arbitrator concluded that petitioner was properly terminated under paragraph 11 (b) of the agreement.

Petitioner then commenced this proceeding to vacate the arbitrator's award. Supreme Court denied petitioner's application to vacate and granted respondents' cross petition to confirm, stating that:

> "petitioner acknowledges that she had the opportunity to present additional witnesses, but she 'opted to [forgo] these witnesses due to strategic, timing, and cost-related considerations, reasoned with the goal of presenting the strongest case, in which [respondents] held the burden' . . . Hindsight is not an acceptable ground for [vacating the award based on] arbitrator misconduct" (2005 NY Slip Op 30267[U], *5).

The Appellate Division affirmed, finding that:

> "the arbitrator [did not] deprive petitioner of a fair hearing when he reversed his ruling on burden of proof, as petitioner was on notice throughout the proceeding that respondents continuously objected to the original ruling, and the arbitrator had indicated that his decision was subject to change.

Not only was petitioner unable to specify any non-redundant evidence she would have presented, but the arbitrator specifically held that respondents would have prevailed regardless of who bore the burden of proof" (37 AD3d 353, 353-354 [2007]).

Petitioner appealed, and we now affirm.

■ The parties here voluntarily agreed to arbitrate disputes arising under the employment agreement and, as such, our review of an arbitration award rendered pursuant to that private agreement is governed exclusively by CPLR 7511. An arbitration award may be vacated where there has been "corruption, fraud or misconduct in procuring the award," the arbitrator "exceeded his [or her] power" or where there was a "failure to follow the procedure of this article" (CPLR 7511 [b] [1] [i], [iii], [iv]). Petitioner contends that CPLR 7511 (b) (1) (i), which authorizes review of arbitral awards for "misconduct," and CPLR 7511 (b) (1) (iv), which authorizes vacatur for failure to follow the statute's procedural requirements, should be read together as authorizing judicial review of arbitration awards where the procedures employed deprived a party of basic due process or fundamental fairness. Petitioner claims that she was deprived of a fair hearing because of the arbitrator's reversal of his decision to place the burden of proof on respondents after evidence had already been presented. This decision, she says, denied her the opportunity to be heard. The record does not support her claim.

Petitioner was on notice from the inception of the arbitration that respondents objected to the arbitrator's initial allocation of the burden of proof. After stating their objection, respondents availed themselves of every opportunity to explain to the arbitrator that the burden should be properly placed on petitioner. At no time did the arbitrator preclude respondents from proffering such arguments.

Petitioner maintains that vacatur should be permitted in fairness because she made certain strategic choices, acting in reliance upon the arbitrator's allocation of the burden of proof. She claims that had she known that she would bear the burden of proof, she would have called additional witnesses who would have attested to her reputation among her peers and in the financial industry. The main issue, however, was whether, in terminating petitioner, respondents acted in good faith. The arbitrator expressly concluded that they did, stating "that the foregoing process was engaged in and performed in good faith,"

and he stated that respondents would have prevailed no matter who bore the burden of proof. His conclusion is reflected in three pages of careful analysis of petitioner's claims. The arbitrator's shifting of the burden of proof after he took evidence did not deny petitioner a fundamentally fair arbitration.

The situation here is unlike others in which we have determined that an arbitration award should be vacated because of arbitrator misconduct (*see e.g. Matter of Goldfinger v Lisker*, 68 NY2d 225 [1986] [arbitrator engaged in ex parte communications with a party]). Here, at worst, the arbitrator engaged in a procedural error, which he ultimately corrected. He did not infect the underlying proceeding with the taint of fraud.

■ Petitioner also contends that the award should be vacated pursuant to CPLR 7511 (b) (1) (iii) because the arbitrator exceeded his authority by concluding that the approval of petitioner's termination by the operating committee, as expressly required under the agreement, was unnecessary. Specifically, petitioner argues that the arbitrator's decision was irrational and the effective equivalent of redrafting the parties' agreement.

"An arbitrator is charged with the interpretation and application of [an] agreement" (*Matter of New York City Tr. Auth. v Transport Workers' Union of Am., Local 100, AFL-CIO*, 6 NY3d 332, 336 [2005] [citation omitted]). In interpreting an agreement, "an excess of power occurs only where the arbitrator's award violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power" (*id.*). Most importantly, "courts are obligated to give deference to the decision of the arbitrator" (*id.* [citation omitted]).

Here, the arbitrator's decision was neither irrational nor did it exceed a specifically enumerated limitation on his power. The operating committee was dissolved before petitioner was terminated and its function was assumed by Mr. Gyra, who, after conducting an independent investigation, approved the termination. Petitioner's construction of the agreement, in the absence of the operating committee, would allow her to be fired only under paragraph 11 (d). The arbitrator did not act irrationally in rejecting that interpretation, which would mean that the dissolution of the operating committee caused paragraph 11 (b) to become superfluous.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges GRAFFEO, READ, SMITH, PIGOTT and JONES concur.

Order affirmed, with costs.